U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

JUN - 4 2008

ROBERT H. SHEMWELL, CLERK
BY _____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

STEPHAN MOORER
        FED. REG. NO. 03502-007                     CIVIL ACTION NO. 08-0365

VS.
                                                    SECTION P
                                                    JUDGE DRELL
U.S. PENITENTIARY, POLLOCK, EXECUTIVE,
SUPERVISORY AND CUSTODIAL STAFF ET AL.   MAGISTRATE JUDGE KIRK

## REPORT AND RECOMMENDATION

Stephan Moorer, an inmate in the custody of the Federal

Bureau of Prisons who is incarcerated at the United States

Penitentiary, Atwater, (USPA) California, filed the instant *pro*

*se* civil rights complaint pursuant to Bivens v. Six Unknown Named

Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999,

29 L.Ed.2d 619 (1971)[1] on March 14, 2008. Plaintiff complains

that he was denied due process and wrongfully charged and

convicted of a disciplinary rules violation for an incident that

allegedly occurred while he was incarcerated at the USPP and that

as a result of this wrongful conviction, he was unlawfully housed

in the Special Housing Units (SHU's) at (1)the United States

Penitentiary, Pollock, Louisiana (USPP); (2)the Federal

Corrections Institute, Oakdale, Louisiana (FCIO); and (3) the

Federal Transfer Center, Oklahoma City, Oklahoma (FTCO).  He also

complains that as a result of this disciplinary conviction he was

---

[1] *Bivens* authorizes civil rights suits filed against federal agents or employees.

the subject of an improper "Disciplinary Transfer" to USPA.

He seeks compensatory damages, punitive damages, and the expungement of the disciplinary report which resulted in his confinement and transfer. He also seeks specific injunctive relief. He named BOP employees or administrators at USPP, USPA, FCIO, and the BOP Regional and National Headquarters as defendants.[2]

In an amended complaint filed on April 24, 2008 he complained that he was wrongfully charged with disciplinary rules violations at USPA in April 2008. He added Corrections Officer D. Cruz as a defendant. [rec. doc. 10]

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the complaint be **DISMISSED WITH PREJUDICE** as frivolous.

### *Statement of the Case*

Plaintiff is a convicted felon who was placed in BOP custody by a court of the District of Columbia. On some date prior to July 8, 2007, he was transferred to USPP. On that date, a fight

---

[2] Plaintiff sued USPP Warden Menifee, USPP Associate Wardens Bell and Edenfield, USPP Captain Marques, Special Investigation Supervisor Lieutenant Garrow, Special Investigation Agent Townsend, USPP Correctional Officer Morrison, Lieutenant Melton, Case Manager Jefferson, Acting C-Unit Manager Zerr, FCIO Disciplinary Hearing Officer Hartline, South Central Regional Director Maldonado, BOP Director Lappin, and National Inmate Appeals Administrator Watts.

was reported on and around the football field of "A" Yard.

Meanwhile, USPP staff observed plaintiff and another inmate, Shawn Blake, in the C-4 Unit stabbing inmate Eric Jones with sharpened weapons. Jones received multiple life threatening stab wounds and lacerations to his torso, abdomen, rib cage, shoulder, and neck. He was escorted to a local hospital for treatment.

A preliminary investigation indicated that plaintiff and Blake were the catalysts for the disturbance on the football field. Plaintiff allegedly instigated an altercation between District of Columbia inmates and inmates from Florida. While this altercation was in progress, he allegedly left the scene and went to the C-4 area where he and inmate Blake entered Jones's cell and attacked him with sharpened weapons. Jones escaped his attackers who pursued him. Plaintiff sustained a laceration to his arm during the incident. [Exhibit 7, rec. doc. 1-3, p. 34, Incident Report]

Plaintiff was taken to the USPP infirmary where his wound was treated. [Exhibit 2, rec. doc. 1-3, p. 15] On July 9, 2007, he was issued a detention order and placed in SHU at USPP pending further investigation. [Exhibit 1, rec. doc. 1-3, p. 13]

On July 10, 2007 an Agent from the Federal Bureau of Investigation and two "Task Force" Agents attempted to question plaintiff. Plaintiff requested the presence of Inmate Blake and when his request was refused he, in turn, refused to answer the

Agents' questions or to provide a statement. [Exhibit 3, rec. doc. 1-3, pp. 17-19]

On or about July 13, 2007 he was transferred to FCIO and placed in SHU at that facility. [Exhibit 4, doc. 1-3, p. 27] En route to FCIO, plaintiff spoke with Lieutenant Bacon; he asked Bacon why he was being moved and Bacon responded, "The last thing I heard, you chased a C.O. [Corrections Officer] with a knife." [Exhibit 4, rec. doc. 1-3, pp. 23-24]

Upon his arrival at the FCIO SHU, plaintiff spoke to USPP Case Manager Coordinator Moore. Plaintiff asked her about the transfer and she replied, "Last thing I heard was you tried to assault a C.O. ..." [Id., p. 25]

Plaintiff submitted an informal Administrative Remedies Procedure Grievance to his counselor, R. Winter. Plaintiff inquired about the grounds for his placement in SHU and his transfer to FCIO. On July 24, 2007, Counselor Winter responded to the informal grievance, "I was informed by USP Pollock staff, that you were placed in SHU at the USP, pending investigation for a possible assault on another inmate. You were issued a detention order on 7-9-07, advising you of this. You state that you were interviewed by other law enforcement agents. I was informed that you refused, thus, the interview did not take place. You were moved to Oakdale, due to over crowding of the SHU at USP. You were not the only inmate moved to other locations. This is not

Page -4-

... uncommon, when other Federal prisons are close." [Exhibit 4, rec. doc. 1-3, p. 28]

Sometime between July 26 – 30, 2007, plaintiff submitted another informal grievance to Counselor Winter. In that grievance he inquired whether the government intended to prosecute him for the events of July 8, 2007. He also complained that Lieutenant Melton had attempted to interview plaintiff on July 26 before he delivered a copy of the incident report. On July 30, 2007, Winter advised plaintiff that prosecution was declined on July 23, 2007. [Exhibit 5, rec. doc. 1-3, p. 30; Exhibit 8, rec. doc. 1-3, p. 36]

On July 25, 2007 plaintiff submitted a formal request for administrative remedy. Plaintiff advised that he (and his family) had been advised by various members of the USPP staff that he was being held in detention and investigated for an alleged assault on a corrections officer. Plaintiff also advised that he would not speak to law enforcement officers unless his attorney was present. [Exhibit 6, rec. doc. 1-3, p. 32]

On July 26, 2007 a formal incident report was delivered to plaintiff. The report alleged that plaintiff and inmate Blake were the catalysts for the disturbance on the football field. Plaintiff allegedly instigated an altercation between District of Columbia inmates and inmates from Florida. While this altercation was in progress, he allegedly left the scene and went to the C-4

area where he and inmate Blake entered Jones's cell and attacked him with sharpened weapons. Jones escaped his attackers who pursued him. Plaintiff sustained a laceration to his arm during the incident. [Exhibit 7, rec. doc. 1-3, p. 34, Incident Report]

On August 1, 2007 the Disciplinary Committee notified plaintiff of his rights and referred the charged to the Disciplinary Hearing Officer (DHO) for further hearing. Plaintiff requested representation by prison staff and requested that anyone who witnessed the event be called as a witness. [Exhibit 9, rec. doc. 1-3, pp. 38-39]

On some unspecified date after August 1, 2007, plaintiff submitted an informal grievance which asked whether USPP had located a witness to testify that plaintiff actually stabbed anyone. He also requested a summary of the witness' testimony and an update on the status of his formal grievance submitted on July 25, 2007. [Exhibit 10, rec. doc. 1-3, p. 41]

On August 23, 2007, FCIO Unit Counselor Cole advised plaintiff that she had been appointed as plaintiff's staff representative for the DHO hearing. Plaintiff provided her a copy of the incident report. Plaintiff was later escorted to the SHU Law Library where he and Ms. Cole conversed. Plaintiff asked if anyone saw him stab the victim and she replied that she could not tell plaintiff that. Plaintiff then explained that the sole reason he requested staff representation was to gain access to

the evidence. She then advised plaintiff that Officer Morrison submitted a memorandum and that the rest of the evidence consisted of medical reports detailing the victim's injuries and pictures of bloody clothes. Plaintiff inquired whether there was any evidence of a weapon; Ms. Cole initially indicated that there was, however, when plaintiff pointed out that Lt. Melton and Mr. Winter both denied evidence of that nature, she responded that she was unsure. She also advised that Officer Morrison alleged that plaintiff chased him with a knife. Plaintiff was then escorted to the DHO hearing. [Exhibit 11, rec. doc. 1-3, pp. 43-45]

The DHO hearing convened on August 23, 2007. Plaintiff denied the charges of attempted killing and possession of a weapon. According to the DHO, plaintiff stated, "I was present but did not participate in the manner [Officer] Garrow said I did. I was not a catalyst, nor did I have premeditation to kill anybody." The DHO asked plaintiff to state the extent of his participation and plaintiff was alleged to have replied, "Garrow should have asked that. There is no witness that saw me stab anybody." The DHO also opined, "It is noted that the DHO considered inmate Moorer to be evasive. His attitude was considered to be non-committal. He responded to questions asked of him with questions of his own." According to the DHO Hearing Report, no witnesses were called by plaintiff because his initial

request to interview "any staff that witnessed the incident" was considered non-specific. At the conclusion of the hearing, plaintiff was found to have committed the prohibited act of Aiding/Participating in the Assault of Another, Greatest Severity, disciplinary code 101(A). That finding was based on:

(1) The written report of Officer Garrow dated July 26, 2007 (see above);

(2) A memorandum authored by Officer Morrison on July 8, 2007 which stated, "I Officer Morrison observed inmate Blake ... and inmate Stephan Moorer ... chasing inmate Eric Jones from cell 462. Both inmates Blake and Moorer had homemade weapons. I notified Control of the fight via radio. Blake then proceeded to chase me with a homemade weapon. I was able to reach the stairwell without injury. At the same time, Inmate Jones was able to escape them for a moment and enter the rear stairwell."

(3) A memorandum dated July 8, 2007 written by Lieutenant Melton which stated, "On 07-08-07, staff reported a fight on the recreation yard. Responding staff reported approximately twenty (20) inmates involved in the altercation. Inmates running and chasing other inmates was wide spread. At 2:41 p.m. staff reported a fight in C-4 Unit. Inmates Stephen Moorer ... and Shawn Blake ... were observed assaulting inmate Eric Jones ... with sharpened metal weapons. Inmate Blake then turned toward the unit officer brandishing a weapon and advanced on the officer.

Responding staff removed Jones from the area and contained Moorer
and Blake. Jones was examined by medical staff and escorted to a
local hospital."

(4) A memorandum by Officer Gaspard written on July 9, 2007
which stated, "At approximately 2:55 p.m., Control announced a
fight in C4. I immediately responded to Cf and the C4 Unit
Officer was secured in a stairwell and he advised myself and
other responding staff to exit the unit, that there was a
combatant inmate in the unit with a weapon. After securing C2, I
assisted in securing C4."

(5) A memorandum dated July 8, 2007 by Chaplain Shields
which stated, "On 07-08-07 I responded to a body alarm of a fight
on A-Yard. A large number of inmates were refusing to get down
and were chasing other inmates on the yard. Many inmates went
over to C yard and I helped control the inmates on A yard. I then
responded to a body alarm in C-Unit and assisted in getting a
stretcher to the back stairwell. Inmates Jones was laying on the
landing between floors in the rear stairwell. We placed Jones on
a stretcher and carried him to medical. I stayed with him until
he was in the ambulance."

(6) A medical assessment of Eric Jones dated July 8, 2007
and written by Nurse Frazier which stated, "Patient appeared in
blood soaked clothing with multiple stab wounds and lacerations
to his upper body. Intestines laying on his stomach. Saline wet

gauze applied with trauma dressing. IV started. Ambulance called."

(7) A memorandum written by Lieutenant Garrow and dated July 25, 2007 which was based on his review of video surveillance. The memorandum stated, "A review of the institution video surveillance shows the following: 2:33:18 Large groups of inmates fighting and chasing each other moves towards NW corner of the football field. 2:33:41 Inmate Jones enters C4 sallyport. 2:34:13 Inmate Jones enters Cell 462. 2:39:06 Inmate Blake enters C4 unit. 2:39:47 Inmate Stephen Moorer enters C-4 sallyport. 2:39:59 Inmate Blake climbs the stairwell and goes to the last cell then departs to walk to Jones' cell. 2:40:47 Inmates Blake and Moorer depart cell 457. 2:40:57 Inmates Blake and Moorer enter Jones' cell. 2:41:13 Inmate Jones exits backward out of the cell, turns and runs down the stairs with Inmates Blake and Moorer chasing him. 2:41:14 Officer Morrison and Inmate Jones go toward the sallyport area. 2:41:21 Inmate Blake turns toward Officer Morrison and starts chasing him striking out toward the officer with a weapon. 2:41:23 Inmate Moorer stays with inmate Jones striking him at 2:41:31. 2:41:32 Inmates Blake and Moorer walk away. 2:41:41 Inmate Jones stumbles toward the officers station. 2:41:41 Officer Morrison opens the back stairwell. 2:41:49 Inmate Jones enters the back stairwell with Morrison. 2:41:50 Inmates Blake and Moorer get to the door where Officer Morrison and

Page -10-

Inmate Jones are. 2:42:02 Responding officers arrive. 2:42:02 Inmate Moorer climbs the stairs and throws something in the upper trash can. EVIDENCE:7294-1-8 1/4" metal weapon with string and tape handle with black lanyard. Weapon has blood on handle. Found in C4 trash can/second floor area near shower/rec. room area above C4 entrance/exit. 7294-2 8 3/4" metal weapon with tape handle. Weapon has blood on handle and blade. Found in C4 trash can/second floor near shower/rec. room, area above C4 unit entrance/exit."

The DHO also considered Prison Inmate classification record which documented that plaintiff and Blake were sentenced out of the District of Columbia and that Jones was sentenced from Florida. The DHO found this evidence consistent with the statement of officer Garrow that plaintiff instigated the altercation between D.C. and Florida inmates and then, accompanied by Blake, entered the cell of their victim and began to attack him.

The Report concluded, "The DHO, after considering the evidence, gave greater weight to the written statement of the reporting officer. The written statement of the reporting officer is fully supported by the written statement of Lieutenant Garrow contained in a supporting memorandum, Video Review, and Evidence. The written statement of the reporting officer is also fully supported by memorandum written by Staff Members – Chaplain T.

Shields, Officer J. Gaspard, Lieutenant M. Melton, Officer S. Morrison, and Nurse P. Frazier."

As a result of the adjudication, the DHO imposed the following sanctions: (1) Disciplinary transfer; (2) Sixty (60) days of disciplinary segregation; and, (3) Loss of telephone and commissary privileges for 1095 days. [Exhibit 12, rec. doc. 1-3, p. 49]

Plaintiff disputed the DHO findings stating that he did all he could to prove his innocence. He claimed that the DHO "extremely misrepresented" his temperament and falsely accused plaintiff of being evasive and non-committal. Plaintiff also took exception to the DHO's report to the extent that it purported to quote plaintiff's statement, "There's no witness that saw me stab anybody." According to plaintiff, he actually asked, "...who said they saw me stab somebody?" In short, plaintiff disputed all of the DHO's conclusions. [Exhibit 12, rec. doc. 1-3, pp. 47-48]

Plaintiff appealed the DHO action to the BOP Regional Director. On November 16, 2007 the Regional Director rejected the appeal noting, "You contend you are innocent of the prohibited act. In Section V of the DHO report, the DHO documented the evidence he relief upon to determine you committed the prohibited act. You contend you were not afforded the witnesses you requested. You would not provide the DHO specific names of staff

you were requesting as witnesses. You provide no new evidence to support these contentions." [rec. doc. 1-3, p. 7]

He then appealed to the National Administrator who, on February 14, 2008 rejected the appeal concluding, "Based on our review of the disciplinary record, we find the required disciplinary procedures were substantially followed. Each of your Due Process rights were upheld during the discipline process. The greater weight of the evidence supports the DHO's decision, and the sanctions imposed were commensurate to the severity level of the offense and in compliance with policy." [rec. doc. 1-3, p. 10]

Plaintiff signed his <u>Bivens</u> complaint on March 10, 2008. [rec. doc. 1, p. 6] In his 71 page typewritten complaint, plaintiff alleged that the various defendants violated his Fifth Amendment rights to substantive/procedural due process, and he provided specific instances to support each claim against each defendant.[3]  On April 7, 2008 plaintiff was granted leave to

---

[3] For example, plaintiff claimed that he was deprived of his right to a prompt and impartial investigation and the right to confront his accusers. He claimed that the defendants filed a false affidavit/incident report; that they deprived him of his right to know and/or confront his accusers and his right to have authentic summaries of the incident. He claimed that he was deprived of his right to a prompt, fair, and impartial investigation and his right to be equally treated to other inmates by being transferred to FCI Oakdale. He also claimed that he was deprived of his right to present the best possible defense and that he was deprived of his right to have a staff representative of his choice.

All of these claims asserted that the defendants violated plaintiff's right to due process with respect to the investigation, prosecution, and appeal of the disciplinary charges plaintiff was ultimately convicted of. [see rec. doc. 1, pp. 14-62]

proceed *in forma pauperis*. [rec. doc. 6] On April 14, 2008
plaintiff filed a motion to modify his complaint [rec. doc. 7].
On April 21, 2008 he filed a motion for an injunction raising
claims related to his motion to proceed *in forma pauperis*. [rec.
doc. 8]

On April 24, 2008 plaintiff filed an amended complaint. He
claimed that the Account's Officer at USPA spoke to him in a
sarcastic tone when plaintiff questioned her about his in forma
pauperis status. He also alleged that he was falsely accused of
stealing a typewriter and placed in SHU at USPA. He also claimed
that he was "... subjected to a minor assault by several unknown
Atwater staff before being escorted into SHU..." He complained
that he and his cellmates and his cell were searched at various
times by various officers. Plaintiff complained that he was then
placed in the Dry Cell where he was stripped of all clothing.
Ultimately, plaintiff was charged with possession of a weapon by
Officer Cruz. Plaintiff claimed that these searches and the
charges were acts of retaliation for filing suit against
Assistant Warden Bell at USPA. He requested an order of the court
removing him from that prison and the appointment of counsel to
assist him in litigating his claims. [rec. doc. 10]

On May 1, 2008, the undersigned granted plaintiff's motion
to amend [rec. doc. 11]; on the same date the undersigned denied
plaintiff's motion for preliminary injunction as moot since his

*in forma pauperis* status had been recognized. [rec. doc. 12] On the same date the undersigned denied plaintiff's motion for appointment of counsel. [rec. doc. 13]

## Law and Analysis

### 1. Screening

When a prisoner is allowed to proceed *in forma pauperis* in a civil rights suit against an officer or employee of a governmental entity pursuant to 42 U.S.C. §1983 or its federal analogue, Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C.1915A; 28 U.S.C.1915(e)(2). Ali v. Higgs, 892 F.2d 438, 440 (5th Cir.1990).

A claim is frivolous if it lacks an arguable basis in law or in fact. Booker v. Koonce, 2 F.3d 114, 115 (5th Cir.1993); see, Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992). A civil rights complaint fails to state a claim upon which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. Of course, in making this determination, the court must assume that

Page -15-

all of the plaintiff's factual allegations are true. Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir.1998).

A hearing need not be conducted for every pro se complaint. Wilson v. Barrientos, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. Green v. McKaskle, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe in forma pauperis complaints liberally, but, they are given broad discretion in determining when such complaints are frivolous. Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d 94, 97 (5th Cir.1994).

A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir.1995). Nevertheless, a district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." Macias v. Raul A. (Unknown) Badge No. 153, 23 F.3d at 97.

The law accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly

baseless. <u>Neiztke v. Williams</u>, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). A complaint is frivolous if it lacks an arguable basis in fact (i.e. the facts are clearly baseless, a category including allegations that are fanciful, fantastic, or delusional). <u>Hicks v. Garner</u>, 69 F.3d 22, 25 (5th Cir.1995); <u>Booker v. Koonce</u>, 2 F.3d 114, 115 (5th Cir.1993); <u>Denton v. Herndandez</u>, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

Plaintiff has filed a 71 page type-written complaint supported by over 50 pages of exhibits. He has set forth specific facts which he claims entitles him to relief. More importantly, he has alleged that he is entitled to relief because each of the various defendants has violated his due process rights as guaranteed by the Fifth Amendment.

In short, plaintiff has provided a specific legal theory which he claims entitles him to relief; he supports his claim with specific facts. Further amendment would serve no useful purpose.

## 2. The Original Complaint

Neither 42 U.S.C. §1983 nor its federal analogue, <u>Bivens</u> are themselves sources of substantive rights; they merely provide the method for vindicating rights conferred elsewhere. <u>Olabisiomotosho v. City of Houston</u>, 185 F.3d 521, 525 n. 3 (5th Cir. 1999); <u>Izen v. Catalina</u>, 398 F.3d 363, 367 n. 3 (5th

Cir.2005)(A <u>Bivens</u> action is analogous to an action under § 1983 except that § 1983 applies to constitutional violations by state, rather than federal actors; the Fifth Circuit does not distinguish between <u>Bivens</u> and § 1983 claims.)

Thus, in order to state a valid civil rights claim under either §1983 or <u>Bivens</u>, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States; and he must show that the alleged deprivation was committed by a person acting under color of state(in the case of a §1983 complaint) or federal law (in a case filed pursuant to <u>Bivens</u>). See <u>West v. Atkins</u>, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); <u>Izen v. Catalina</u>, 398 F.3d at 367 n. 3.

Plaintiff claims that each of the defendants, acting under color of federal law, violated his Fifth Amendment due process rights with regard to the investigation, prosecution, and appeal of the charges which arose on July 8, 2008. As such, plaintiff has failed to state a claim for which relief may be granted.

In <u>Sandin v. Connor</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court clarified when due process protections attach to the prison disciplinary process. The Court held that the Due Process Clause does not afford an inmate a protected liberty interest that would entitle the inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not

"present the type of atypical, significant deprivation in which a
state might conceivably create a liberty interest" and the
duration of the prisoner's original sentence is not affected.
Sandin, 515 U.S. at 486. The Court noted that the protections of
Fourteenth Amendment due process defined in Wolff v. McDonnell,
418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), i.e. notice,
hearing, impartial hearing officer, etc., do not apply to
disciplinary sentences that do not present "a dramatic departure
from the conditions of the [prisoner's] sentence." The Court held
that a prisoner's liberty interest is "generally limited to
freedom from restraint which, while not exceeding the sentence in
such an unexpected manner as to give rise to protection by the
Due Process clause of its own force, nonetheless imposes atypical
and significant hardship on the inmate in relation to the
ordinary incidents of prison life." Sandin, 515 U.S. at 484.

   Thus, under the guidance provided by Sandin, the Fifth
Circuit has held that as a general rule, only sanctions which
result in loss of good time credit or which otherwise directly
and adversely affect the prisoner's release date will implicate a
constitutionally protected liberty interest. Orellana v. Kyle, 65
F.3d 29, 31-32 (5th Cir.1995).

   Moreover, in commenting on Sandin, the Fifth Circuit noted
that liberty interests which are protected by the Due Process
Clause are generally limited to actions which affect the quantity

of time rather than the quality of time served by a prisoner.
Madison v. Parker, 104 F.3d 765, 767 (5th Cir.1997)(citing
Sandin, 515 U .S. at 478). As noted by the Fifth Circuit, "the
Due Process Clause does not protect every change in the
conditions of confinement which has a substantial adverse effect
upon a prisoner." Madison, 104 F.3d 767 (citing Sandin, 515 U.S.
at 478)(citing Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532,
2538, 49 L.Ed.2d 451(1976)). Accordingly, the Fifth Circuit held
that 30 day commissary and cell restrictions imposed as
punishment are, in fact, merely changes in the conditions of
confinement which do not implicate due process concerns. Madison,
104 F.3d at 768.

Relying on Sandin, the Fifth Circuit has also found that
"administrative segregation, without more, simply does not
constitute a deprivation of a constitutionally cognizable liberty
interest." Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir.1996)
(quoting Luken v. Scott, 71 F.3d 192, 193 (5th 1995)) (rejecting
claim that confinement in administrative segregation violated a
prisoner's due process rights); Crowder v. True, 74 F.3d 812,
814-15 (7th Cir.1996) (federal prisoner's detention for three
months in administrative segregation did not constitute a
significant, atypical hardship which constituted a deprivation of
a liberty interest).

The Fifth Circuit has also rejected the notion that the

additional restrictions imposed on those in administrative segregation violate due process rights. Martin v. Scott, 156 F.3d 578, 580 (5th Cir.1998) (per curiam). ("... absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." Id. at 580).

Finally, the Fifth Circuit has held that prisoners do not have a general liberty interest to be free from prison transfers. Biliski v. Harborth, 55 F.3d 160, 161 (5th Cir.1995),cited in Burgess v. Johnson, 208 F.3d 1006 (5th Cir. 2000).

In the instant action, plaintiff was not deprived of any good time credits as a result of the complained of disciplinary action. The penalties imposed following the DHO's adjudication included: (1) a disciplinary transfer;(2) sixty(60)days of disciplinary segregation; and(3) the loss of telephone and commissary privileges for 1095 days. [Exhibit 12, rec. doc. 1-3, p. 49] Thus, while the disciplinary action may have caused plaintiff to lose certain privileges, such restrictions did not impose an atypical, significant hardship on plaintiff in relation to the ordinary incidences of prison life. Consequently, no federally protected due process rights were violated in connection with plaintiff's disciplinary hearing and its

aftermath. Plaintiff's due process claims lack an arguable basis in law, because, read liberally, his complaint "alleges the violation of a legal interest which clearly does not exist." Harper v. Showers, 174 F.3d 716, at 718. In short, since plaintiff's claim that he was denied due process lacks an arguable basis in law, it is recommended that the original complaint be dismissed as frivolous pursuant to 28 U.S.C. § 1915A(b)(1).

### 3. The Amended Complaint

In his April 24, 2008 amended complaint, plaintiff alleged fault on the part of Corrections Officers and others at the USPA.[4]

Title 28 U.S.C. §1391(e) provides, "A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in

---

[4] Plaintiff claimed that the Account's Officer at USPA spoke to him in a sarcastic tone when plaintiff questioned her about his in forma pauperis status. He also alleged that he was falsely accused of stealing a typewriter and placed in SHU at USPA. He also claimed that he was "... subjected to a minor assault by several unknown Atwater staff before being escorted into SHU..." He complained that he and his cellmates and his cell were searched at various times by various officers. Plaintiff complained that he was then placed in the Dry Cell where he was stripped of all clothing. Ultimately, plaintiff was charged with possession of a weapon by Officer Cruz. Plaintiff claimed that these searches and the charges were acts of retaliation for filing suit against Assistant Warden Bell at USPA. He requested an order of the court removing him from that prison and the appointment of counsel to assist him in litigating his claims. [rec. doc. 10]

any judicial district in which (1) a defendant in the action
resides, (2) a substantial part of the events or omissions giving
rise to the claim occurred, or a substantial part of property
that is the subject of the action is situated, or (3) the
plaintiff resides if no real property is involved in the action."

Since the defendants mentioned in the amended complaint do
not reside in this District, and since the events complained of
occurred elsewhere, venue is improper. To the extent plaintiff
seeks to pursue the claims raised in his amended complaint, he
should file the complaint in the appropriate United States
District Court. (The United States Penitentiary at Atwater is
located in the geographical jurisdiction of the United States
District Court for the Eastern District of California.)

Therefore, plaintiff's amended complaint [rec. doc. 10]
should be dismissed without prejudice.

### 4. Conclusion and Recommendation

Accordingly,

IT IS RECOMMENDED that plaintiff's civil rights complaint be
DISMISSED WITH PREJUDICE as frivolous pursuant to the provisions
of 28 U.S.C.1915(e)(2);

IT IS FURTHER RECOMMENDED that plaintiff's amended complaint
[rec. doc. 10] be DISMISSED WITHOUT PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and
Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation

have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See <u>Douglas v. United Services Automobile Association</u>, 79 F.3d 1415 (5th Cir.1996).**

In Chambers, Alexandria, Louisiana, _____, 2008.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE